## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

| | |
|---|---|
| **RICHARD SCHLATTER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **ALLEN COUNTY SHERIFF KEN FRIES,** | ) |
| *sued in his official and representative capacity*; | )     **Case No. 1:11-CV-211** |
| **DR. HORSTMEYER,** *sued in his individual* | ) |
| *capacity*; **PAMELA THORNTON, RN #C935;** | ) |
| **CHRISTINE CHASE, QMA PE #C452;** | ) |
| **ANDREA L. SIERKS, LPN; MERISSA** | ) |
| **RUNYON, LPN #916; PE #C1037; PE #1025;** | ) |
| **and CORRECTIONAL OFFICER _____** | ) |
| **WAUKASEY,** *Allen County Jail personnel* | ) |
| *sued in their individual capacities*, | ) |
| | ) |
| **Defendants.** | ) |

## OPINION AND ORDER

## I. INTRODUCTION

Plaintiff Richard Schlatter contends that while he was an inmate in the Allen County Jail, he was deliberately denied adequate care for his bleeding gums and dental pain because Defendants refused to schedule him for a teeth cleaning or prescribe effective pain medication.[1] He subsequently sued them under 42 U.S.C. § 1983, alleging violations of the Eighth and Fourteenth Amendments as well as state law negligence claims.

Now before the Court is Defendants' motion for summary judgment on all of Schlatter's claims. (Docket # 65.) For the following reasons, the motion will be GRANTED.

---

[1] Subject matter jurisdiction arises under 28 U.S.C. § 1331. Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting. (Docket # 47.)

## II. FACTUAL BACKGROUND[2]

On June 20, 2009, Richard Schlatter was arrested on state charges and booked into the Allen County Jail (the "Jail"). (*See* Hershberger Aff. ¶¶ 9-10, Ex. 1 at 1-5; Schlatter Aff. ¶ 2.) Schlatter maintains that, during the approximately 15 months he was incarcerated there, he suffered repeated, ongoing, and daily bleeding of his gums; that areas of his teeth near their roots became exposed as his gums receded; and that these exposed parts were extremely sensitive to hot and cold temperatures. (Schlatter Aff. ¶ 3.) On a scale of 1 to 10, with 1 being nearly no pain and 10 being the worst pain imaginable, Schlatter rated the level of pain in his teeth as often around a 5, but worsening to a 6 or 7 when his teeth were exposed to hot or cold temperatures or the air. (Schlatter Aff. ¶ 3.) Although a health evaluation performed upon booking did not note bleeding gums (*see* Thornton Aff. Ex. 1 at 311), while at the Jail, Schlatter submitted a number of Medical Request Forms complaining about this problem (Schlatter Aff. ¶ 4).

An inmate housed in the Jail that desires medical or dental care can submit a Medical Request Form, which is typically addressed by placing the inmate on the Jail's sick call to be evaluated by Dr. Richard Horstmeyer, a licensed physician and dentist who provided medical care to inmates and screened them for possible referral for outside dental care. (Thornton Aff. ¶¶ 10-11; Horstmeyer Aff. ¶¶ 2-3.) Matters of medical judgment were the sole province of the responsible physician providing healthcare services in the Jail. (Thornton Aff. ¶ 12.)

During Schlatter's incarceration, Pamela Thornton, RN, was the Jail's Director of Health

---

[2] For summary judgment purposes, the facts are recited in the light most favorable to Schlatter, the nonmoving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Defendants also filed a Motion to Strike (Docket # 76), asking the Court to strike the fourth sentence of paragraph 3 of Schlatter's Affidavit and Schlatter's response to Defendant Merissa Runyon's Interrogatory No. 9. But even when considering this evidence, Schlatter's claims still fail as a matter of law and summary judgment is therefore appropriate. As such, the Court will consider the evidence that Defendants seek to strike and deem their Motion to Strike (Docket # 76) MOOT.

Services and, in that capacity, was responsible for supervising all patient care and the medical staff and primarily performed managerial functions, such as contacting outside providers to coordinate medical and dental care. (Thornton Aff. ¶¶ 4, 7.) As a matter of practice, if an inmate required medical or dental care that was medically necessary and could not be provided at the Jail, Dr. Horstmeyer had the authority to authorize the Jail's health services department to make arrangements for an outside provider to see the inmate. (Thornton Aff. ¶ 15.) On the other hand, if an inmate wanted medical or dental care that was not deemed medically necessary, the inmate could request to be seen by an outside provider at his own cost. (Thornton Aff. ¶ 16.)

On July 1, 2009, Schlatter submitted a Medical Request Form in which he complained of spitting blood and constant back pain. (Thornton Aff. Ex. 1 at 305.) The next day he was seen by Dr. Horstmeyer, who prescribed pain medication. (Thornton Aff. Ex. 1 at 302.)

Four days later, on July 5th, Schlatter submitted another Medical Request Form, stating that his mouth was bleeding, his gums were swollen, and his teeth hurt. (Thornton Aff. Ex. 1 at 301.) According to Schlatter, his dental pain consisted of sensitivity such that it hurt to brush his teeth and eat, though he was still able to do so. (Schlatter Dep. 59-60.) Schlatter subsequently saw Dr. Horstmeyer for a dental exam two days later, on July 7th. (Thornton Aff. Ex. 1 at 299; Horstmeyer Aff. ¶ 4.) Dr. Horstmeyer concluded that Schlatter had mild gingivitis, recommended a teeth cleaning upon release, and, at Schlatter's request (Schlatter Dep. 62), prescribed a multivitamin. (Thornton Aff. Ex. 1 at 299; Horstmeyer Aff. ¶ 4.) Schlatter maintains that Dr. Horstmeyer did not prescribe him any more medication because his existing pain medications—for his back—were also sufficient for his dental pain. (Schlatter Dep. 65-66, 140-41.) Schlatter admits that the medications were providing some relief from his dental pain,

but "[n]ot enough."[3]  (Schlatter Dep. 66-67.)  While Schlatter refers to this at the "one time [he] complained of the pain," he also testified that he spoke to Dr. Horstmeyer on other occasions about it and became convinced that Dr. Horstmeyer was not going to prescribe any more pain medication.  (Schlatter Dep. 140-41.)

On July 15, 2009, Schlatter complained in a request form that his medications, which he insists were for more than his back pain (Schlatter Dep. 64), were not doing enough for his pain.  (Thornton Aff. Ex. 1 at 297.)  Then, on July 25th, Schlatter submitted a Medical Request Form complaining of bleeding gums for the past month and requesting a remedy; he also indicated that he had been told nothing could be done and asked that, if true, this be put in writing.  (Thornton Aff. Ex. 1 at 296.)  In response, a nurse reminded Schlatter that he had been instructed to get his teeth cleaned after his release and had not been told that there was no treatment.  (Thornton Aff. Ex. 1 at 296.)

A couple of days later, on July 27th, Schlatter again submitted a request form complaining of bleeding gums; a nurse asked Schlatter for his dentist to obtain a price quote for a teeth cleaning.  (Thornton Aff. Ex. 1 at 295.)  Schlatter provided the name of New York Dentist, where he had never been before (Schlatter Dep. 72), and indicated that his gums had been bleeding daily since his first week in the Jail.  (Thornton Aff. Ex. 1 at 294.)  In response, Nurse Francis Harris explained that Schlatter needed to have money in his inmate account before an appointment could be scheduled, and since he did not, she suggested he request mouth rinses.  (Thornton Aff. ¶ 29, Ex. 1 at 294.)

Nurse Thornton subsequently contacted New York Dentist and was given a price quote of

---

[3] In his affidavit, Schlatter asserts that he was never given any pain medication that worked for his dental pain during his incarceration in the Jail.  (Schlatter Aff. ¶ 5.)

$85.00 for a teeth cleaning (Thornton Aff. ¶ 30, Ex. 1 at 292), which she communicated to Schlatter in response to his July 31, 2009, Medical Request Form, where he complained that his gums had been bleeding every day "uncontrollably" for over a month.  (Thornton Aff. ¶ 33, Ex. 1 at 291).  Nurse Thornton also reiterated that Schlatter would need to have $85.00 in his inmate account before an appointment would be scheduled.  (Thornton Aff. ¶ 33, Ex. 1 at 291.)

Schlatter submitted another request form on August 3, 2009, requesting medical treatment and mouth rinses for his "continuously bleeding" gums.  (Thornton Aff. Ex. 1 at 283.) Nurse Thornton placed him on the list to be seen by Dr. Horstmeyer (Thornton Aff. ¶ 35, Ex. 1 at 283), who evaluated Schlatter two days later for his bleeding gums and back pain complaints (Thornton Aff. Ex. 1 at 282; Horstmeyer Aff. ¶ 5).  Dr. Horstmeyer again found that Schlatter had mild gingivitis, continued to treat his back pain with two pain medications, and prescribed Listerine mouth rinses for the gingivitis.  (Thornton Aff. Ex. 1 at 282; Horstmeyer Aff. ¶ 5.) Shortly thereafter, Dr. Horstmeyer switched Schlatter's rinses from Listerine to a non-alcoholic mouth rinse based on reports that Schlatter was sometimes swallowing the Listerine (Thornton Aff. Ex. 1 at 279; Horstmeyer Aff. ¶ 6), something Schlatter denies (Schlatter Aff. ¶ 7).

In mid-August, after Schlatter completed a Medical Request Form continuing to complain of "uncontrollably" bleeding gums (Thornton Aff. Ex. 1 at 278), he was seen again by Dr. Horstmeyer, who told him to follow up with an appointment for a dental cleaning and to make arrangements for payment (Thornton Aff. Ex. 1 at 277; Horstmeyer Aff. ¶ 7; *see also* Schlatter Dep. 88-89).  The next day, August 20, 2009, Dr. Horstmeyer ordered lab work done on Schlatter, purportedly because of his bleeding gums and mild gingivitis and to diagnosis any underlying issues.  (Thornton Aff. Ex. 1 at 275; Horstmeyer Aff. ¶ 8.)  Schlatter, however,

describes this action as Dr. Horstmeyer's effort to "make it look like he was doing something, when he knew what the problem was the whole time." (Schlatter Dep. 90.) The lab results were all within normal limits, and Dr. Horstmeyer ordered no change in treatment. (Thornton Aff. Ex. 1 at 272, 274; Horstmeyer Aff. ¶ 8.)

On August 27, 2009, the U.S. Marshals for the Northern District of Indiana issued a federal detainer for Schlatter, which consequently forbade the Allen County Sheriff's Department from transporting him outside the Jail without pre-approval from the Marshals Service, including for non-emergency medical care and services. (Hershberger Aff. ¶¶ 11-12; *see* Hershberger Aff. Ex. 1 at 10.) The Marshals Service also became responsible for approving all medical and dental care Schlatter received outside the Jail. (Hershberger Aff. ¶ 13.)

Schlatter, having been told by a Deputy U.S. Marshal that he should be able to get his teeth cleaned as a federal inmate, submitted a request form on September 2nd, requesting a teeth cleaning. (Thornton Aff. Ex. 1 at 268; *see* Schlatter Dep. 93-94.) Dr. Horstmeyer saw Schlatter about a week later, again concluding that he did not have severe gingivitis. (Thornton Aff. Ex. 1 at 267; Horstmeyer Aff. ¶ 9.) At Schlatter's request, Dr. Horstmeyer directed that the Marshals Service be asked to approve a teeth cleaning, but also noted that he did *not* consider it an emergency. (Thornton Aff. Ex. 1 at 267; Horstmeyer Aff. ¶ 9.) Schlatter contends that Dr. Horstmeyer also reiterated that he, Dr. Horstmeyer, could not do anything. (Schlatter Dep. 93.)

The teeth cleaning request was submitted to the Marshals Service, but included Dr. Horstmeyer's opinion that it was not a necessity; the request was denied since an inmate must be in federal custody for one year to qualify for a routine cleaning. (Thornton Aff. Ex. 1 at 266.) That same day, Nurse Thornton sent a note to Schlatter informing him of the Marshals Service's

decision. (Thornton Aff. ¶ 51, Ex. 1 at 265.) Schlatter believes that Dr. Horstmeyer's opinion scotched his dental cleaning plans. (Schlatter Dep. 95.)

In October, Schlatter complained that his gums were still bleeding daily and worsened if lying down. (Thornton Aff. Ex. 1 at 242.) A nurse told Schlatter to notify his block officer next time his gums bled. (Thornton Aff. Ex. 1 at 242.) Four days later, Schlatter submitted another Medical Request Form, complaining that he did not get his pain medication the night before and was in extreme pain all night. (Thornton Aff. Ex. 1 at 241.) Although this request is not specific, Schlatter says that he was indirectly referencing dental pain because he lumped all his pain together. (Schlatter Dep. 101-02.)

The following day, October 17, 2009, Schlatter completed a request form in which he recounted that, as instructed, he had notified his block officer that his gums were bleeding by showing Officer Wacasey, and a nurse, blood he had spit into his soup cup (Thornton Aff. Ex. 1 at 240; *see* Schlatter Dep. 103-05); the nurse reported that Schlatter's gums were bleeding a "scant amount" (Thornton Aff. Ex. 1 at 239). Schlatter further indicated in this request form that his gums bled daily and that it was sporadic and of varying intensity. (Thornton Aff. Ex. 1 at 240; Schlatter Dep. 104.) Three days later, Dr. Horstmeyer performed a dental exam on Schlatter, observing again only mild gingivitis and suggesting that his family pay for a teeth cleaning. (Thornton Aff. Ex. 1 at 237; Horstmeyer Aff. ¶ 10.)

Schlatter submitted another Medical Request Form for his bleeding gums in November, requesting antibiotics to kill the bacteria in his mouth. (Thornton Aff. Ex. 1 at 229.) Dr. Horstmeyer saw him for a dental exam the next day and prescribed Penicillin. (Thornton Aff. Ex. 1 at 227; Horstmeyer Aff. ¶ 11.)

The following month, Schlatter again complained of his bleeding gums in a request form, stating that a Deputy U.S. Marshal told him to submit another form because he had been refused a teeth cleaning. (Thornton Aff. Ex. 1 at 223.) In response, a nurse reminded Schlatter that he had been seen by the dentist in November and given Penicillin and suggested that he rinse his mouth with warm water three to four times a day. (Thornton Aff. Ex. 1 at 223; Smith Aff. ¶ 11.)

Schlatter was also seen for a health exam later that month. (Thornton Aff. Ex. 1 at 222.) The examining nurse did not observe any signs of bleeding gums and noted that Schlatter was being treated for back pain. (Thornton Aff. Ex. 1 at 222.) Schlatter confirmed that he was receiving medication for his back pain. (Schlatter Dep. 114-15.)

In February 2010, as a result of Schlatter's complaints of headaches (Thornton Aff. Ex. 1 at 212), Dr. Horstmeyer placed him on Midrin (Thornton Aff. Ex. 1 at 210), a stronger pain medication which Schlatter insisted was prescribed to treat not just his back pain or headaches, but "all pain associated" (Schlatter Dep. 68, 118). Schlatter admitted that Midrin somewhat addressed his dental pain, though not when he brushed his teeth, and that his sensitivity to hot and cold temperatures diminished. (Schlatter Dep. 68-69.)

The next month, Schlatter asked to be provided with the drug facts for each of his medications (Thornton Aff. Ex. 1 at 192) to find out what the medications were doing and figure out what was going on with him (Schlatter Dep. 120-21). In this request, Schlatter insists he was again indirectly referencing his bleeding gums and associated pain. (Schlatter Dep. 120-21.)

Three months later, in June 2010, Schlatter asked for a free teeth cleaning because he had been in custody for over a year. (Thornton Aff. Ex. 1 at 92.) The following day, Nurse Thornton submitted a request to the Marshals Service for a dental cleaning (Thornton Aff. ¶ 70,

Ex. 1 at 86-87), but the Marshals Service responded that the Jail doctor or dentist needed to evaluate Schlatter and provide a note before the request would be approved (Thornton Aff. Ex. 1 at 83).

Dr. Horstmeyer examined Schlatter's teeth on July 1, 2010, finding some gingivitis, noting that Schlatter had not had his teeth professionally cleaned in four years, and asking that the Marshals Service be contacted for approval of a teeth cleaning. (Thornton Aff. Ex. 1 at 61; Horstmeyer Aff. ¶ 13.) The Marshals Service denied this request, explaining that even though Schlatter had been in custody for a year, its policy required continuous *federal* custody for one year. (Thornton Aff. Ex. 1 at 50.) Nurse Thornton then informed Schlatter of the reasons for the denial. (Thornton Aff. ¶ 76, Ex. 1 at 49.)

Accordingly, on August 27, 2010, after one year of being a federal inmate, Schlatter submitted a Medical Request Form requesting a teeth cleaning. (Thornton Aff. Ex. 1 at 19.) Schlatter's request was immediately communicated to the Marshals Service (Thornton Aff. Ex. 1 at 16-17, 20-21; Runyon Aff. ¶ 17), which approved it on September 8, 2010 (Thornton Aff. Ex. 1 at 7). That same day, Schlatter was scheduled for a teeth cleaning on September 20, 2010. (Runyon Aff. ¶ 18; *see* Thornton Aff. Ex. 1 at 9.) Also on September 8th, Schlatter, not knowing his prior request had been approved, again asked for a teeth cleaning. (Thornton Aff. Ex. 1 at 8.) The following day, Nurse Thornton informed him that his dental cleaning had been approved and scheduled. (Thornton Aff. ¶ 81, Ex. 1 at 5.)

On September 13, 2010, a week before his scheduled dental appointment, Schlatter was transported out of the Jail and to the Federal Department of Corrections. (Hershberger Aff. ¶ 14.) He eventually received a teeth cleaning at Forrest City, a Bureau of Prisons facility in

Arkansas.  (Schlatter Aff. ¶¶ 2, 8.)  While at Forrest City, Schlatter also underwent a dental screening by Dr. Stewart, a dentist, in November 2010.  (Downie Aff. Ex. 2.)  Dr. Stewart rated each of Schlatter's oral soft tissue quadrants a "2," which represents very mild soft tissue irritation without pocketing, consistent with mild gingivitis.  (Downie Aff. ¶ 6.)

### III.  STANDARD OF REVIEW

Summary judgment may be granted only if there are no disputed genuine issues of material fact.  *Payne*, 337 F.3d at 770.  When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder."  *Id.*  The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial."  *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 507 (7th Cir. 2010) (quoting *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994)).  If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted.  *Payne*, 337 F.3d at 770.

A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true," as "summary judgment cannot be used to resolve swearing contests between litigants."  *Id.*  However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial."  *Id.* at 771.

### IV.  DISCUSSION

In his Complaint, Schlatter brought the following four claims: (1) a deliberate indifference to a serious medical need claim under § 1983 against Dr. Horstmeyer, Nurses

Thornton, Carol Smith, Amanda Bauermeister, Andrea Sierks, and Merissa Runyon, Aide

Christine Chase, and Officer Richard Wacasey (incorrectly named as "Officer Waukasey" in the

caption); (2) a § 1983 official capacity claim against Sheriff Fries; (3) a state law negligence

claim against Nurses Smith and Bauermeister, Aide Chase, and Officer Wacasey; and (4) a

negligence claim against Sheriff Fries under *respondeat superior* liability.[4]  Defendants moved

for summary judgment on all of these claims.

In his response, Schlatter explicitly abandons all of his claims against Nurses Smith,

Bauermeister, Sierks, and Runyon, Aide Chase, and Officer Wacasey as well as his negligence

claim against Sheriff Fries.  (Pl.'s Mem. in Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Mem. in

Opp'n") 2, 16.)  As such, Defendants Smith, Bauermeister, Sierks, Runyon, Chase, and Wacasey

are entitled to summary judgment in their favor and dismissal from this case.  Defendants'

Motion for Summary Judgment will be further GRANTED on Schlatter's state law negligence

claims, which he is no longer pursuing.  Thus, Schlatter's only remaining claims are a § 1983

deliberate indifference claim against Dr. Horstmeyer and Nurse Thornton and a § 1983 official

capacity claim against Sheriff Fries, both of which the Court will address in turn.

### A.  Schlatter's Deliberate Indifference Claims Against the Healthcare Providers Fail as a Matter of Law

The Eighth Amendment imposes a duty on jail officials "to provide humane conditions of

confinement," which includes ensuring that inmates receive adequate food, clothing, shelter, and

medical care.  *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009) (citing *Farmer v. Brennan*,

511 U.S. 825, 834 (1994)); *accord Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1072

---

[4] Schlatter originally brought state law negligence claims against all the Defendants, but this Court
dismissed those claims against Nurses Thornton, Sierks, and Runyon in its December 28, 2011, Opinion and Order
(Docket # 50), and the parties stipulated to dismiss such claims against Dr. Horstmeyer (Docket # 56).

(7th Cir. 2012) (quoting *Boyce v. Moore*, 314 F.3d 884, 888-89 (7th Cir. 2002)). When jail officials act with deliberate indifference to the serious medical needs of an inmate, they violate this proscription. *Holloway*, 700 F.3d at 1072 (citing *Farmer*, 511 U.S. at 835); *see Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) ("Deliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." (citation omitted)); *Knight*, 590 F.3d at 463. Although the Eighth Amendment does not extend to pretrial detainees like Schlatter, "the Due Process Clause of the Fourteenth Amendment protects pretrial detainees under the same standard as the Eighth Amendment." *Zentmyer v. Kendall Cnty.*, 220 F.3d 805, 810 (7th Cir. 2000).

To prevail on a deliberate indifference claim, a plaintiff must demonstrate (1) that his medical condition is "objectively, sufficiently serious," and (2) that the defendant acted with a "sufficiently culpable state of mind." *Holloway*, 700 F.3d at 1072 (quoting *Farmer*, 511 U.S. at 834); *accord Boyce*, 314 F.3d at 889. "A medical need is considered sufficiently serious if the inmate's condition 'has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention.'" *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005)).

To demonstrate the second element—that the defendant acted with a sufficiently culpable state of mind—"a plaintiff must put forth evidence to establish that the defendant knew of a serious risk to the prisoner's health and consciously disregarded that risk." *Holloway*, 700 F.3d at 1073 (citing *Johnson v. Doughty,* 433 F.3d 1001, 1010 (7th Cir. 2006)). This subjective standard requires more than negligence, approaching intentional wrongdoing. *Id.* (citing *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 988 (7th Cir. 1988)). That is, "[a]lthough

negligence or inadvertence will not support a deliberate indifference claim, an inmate need not establish that prison officials actually intended harm to befall him from the failure to provide adequate care." *Roe*, 631 F.3d at 857. "[I]t is enough to show that the defendants knew of a substantial risk of harm to the inmate and disregarded the risk." *Id.* (quoting *Greeno*, 414 F.3d at 653); *see also Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) ("[A]n official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference.").

Here, the parties dispute both the objective and subjective elements. But, because the subjective element—whether Dr. Horstmeyer or Nurse Thornton acted with a sufficiently culpable state of mind—is ultimately dispositive, the Court will assume for the purposes of summary judgment that Schlatter suffered from an objectively serious medical condition.

### 1. Schlatter Cannot Demonstrate that Dr. Horstmeyer Acted with Deliberate Indifference

Schlatter contends that Dr. Horstmeyer knew that the medication he was provided at the Jail was ineffective in controlling his chronic bleeding and serious pain, yet failed to prescribe an effective pain medication. (Pl.'s Mem. in Opp'n 12.) On the other hand, Defendants maintain that Schlatter's arguments amount to a mere disagreement with Dr. Horstmeyer about the appropriate course of medical and dental treatment and that Schlatter cannot demonstrate that Dr. Horstmeyer's treatment was a substantial departure from accepted professional standards or not based on his professional judgment. (Defs.' Mem. in Supp. of Mot. for Summ. J. ("Defs.' Mem. in Supp.") 12-13; Defs.' Reply in Supp. of Mot. for Summ. J. ("Defs.' Reply") 11-12.)

It is well-settled that prisoners are "not entitled to receive 'unqualified access to healthcare.'" *Holloway*, 700 F.3d at 1073 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)).

Nor are they entitled to demand specific care or the best care possible. *Arnett*, 658 F.3d at 754. Rather, "prisoners are entitled only to 'adequate medical care.'" *Holloway*, 700 F.3d at 1073 (quoting *Johnson,* 433 F.3d at 1013). As such, "[m]ere medical malpractice or a disagreement with a doctor's medical judgment is not deliberate indifference." *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007) (citations omitted).

As the Seventh Circuit Court of Appeals has recognized, "[t]here is not one 'proper' way to practice medicine in prison, but rather a range of acceptable courses based on prevailing standards in the field." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Accordingly, "[f]or a medical professional to be held liable under the deliberate indifference standard, he must make a decision that is 'such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment.'" *Holloway*, 700 F.3d at 1073 (quoting *Jackson*, 541 F.3d at 697 (citation omitted)). The nub of this inquiry is "what risk the medical staff knew of and whether the course of treatment was so far afield as to allow a jury to infer deliberate indifference." *Duckworth v. Ahmad*, 532 F.3d 675, 680 (7th Cir. 2008) (citations omitted).

Here, Dr. Horstmeyer, having seen Schlatter several times over the course of his 15-month incarceration in response to his complaints of bleeding gums and having diagnosed him with mild gingivitis, certainly knew about this condition. To address Schlatter's mild gingivitis, Dr. Horstmeyer prescribed a multivitamin, mouth rinses, and antibiotics; ordered lab work; and recommended that Schlatter have his teeth cleaned upon his release, noting, however, that this treatment was not an emergency. (Thornton Aff. Ex. 1 at 227, 267, 275, 279, 282; Horstmeyer Aff. ¶¶ 4-6, 8-9, 11.) Dr. Horstmeyer even prescribed the multivitamin, mouth rinses, and

antibiotics after Schlatter requested them (*see* Schlatter Dep. 62; Thornton Aff. Ex. 1 at 229, 283), at least partly complying with Schlatter's demand for specific care, which he did not have to do, *see Arnett*, 658 F.3d at 754 (noting that an inmate is not entitled to demand specific care).

Schlatter nevertheless contends that Dr. Horstmeyer knew that the medication he was being provided was ineffective in controlling his chronic bleeding. (Pl.'s Mem. in Opp'n 12.) But, throughout Schlatter's incarceration, Dr. Horstmeyer consistently classified his gingivitis as mild (Thornton Aff. Ex. 1 at 237, 275, 282, 299; Horstmeyer Aff. ¶¶ 4-5, 8, 10), not severe (Thornton Aff. Ex. 1 at 267; Horstmeyer Aff. ¶ 9), or simply "some gingivitis" (Thornton Aff. Ex. 1 at 61; Horstmeyer Aff. ¶ 13). As such, Schlatter's gingivitis did not appear to worsen under Dr. Horstmeyer's course of treatment, at least as far as Dr. Horstmeyer observed and documented. *Cf. Greeno*, 414 F.3d at 654 (finding deliberate indifference where medical defendants did not alter plaintiff's course of treatment over a two year period even though his condition was getting worse and he was vomiting regularly).

And, to the extent that Schlatter is implying that Dr. Horstmeyer was deliberately indifferent by merely recommending a teeth cleaning and deeming it a non-emergency—thereby requiring Schlatter to pay for the cleaning, pursuant to the Jail's practice—Schlatter presents no evidence showing that Dr. Horstmeyer's decision to classify a teeth cleaning as a non-emergency was a substantial departure from accepted professional standards. *See Holloway*, 700 F.3d at 1073. Nor does he establish that Dr. Horstmeyer's treating his mild gingivitis with a multivitamin, mouth rinses, and antibiotics was "so far afield of accepted professional standards as to raise the inference that it was not actually based on medical judgment." *Id.* (citations omitted).

Schlatter further argues that Dr. Horstmeyer knew that his medication was also ineffective in controlling his chronic and serious dental pain. (Pl.'s Mem. in Opp'n 12-13.) First, there is a real question about whether Schlatter communicated this chronic dental pain to Dr. Horstmeyer. The only time he ever explicitly complained in writing about dental pain was on July 5, 2009. (Thornton Aff. Ex. 1 at 301.) By that point, Schlatter was already on two pain medications for his back pain. (*See* Thornton Aff. Ex. 1 at 302.) As such, according to Schlatter, Dr. Horstmeyer indicated that he was already on enough pain medication and that it should also cover his dental pain. (Schlatter Dep. 140-41.) Although Schlatter refers to this at the "one time [he] complained of the pain," he also testified that on other occasions he spoke to Dr. Horstmeyer about it, but it was apparent that Dr. Horstmeyer was not going to prescribe any further pain medication. (Schlatter Dep. 140-41.) Schlatter further contends that his complaints of bleeding gums—at least in his mind—were references to dental pain. (Schlatter Dep. 135-36.) Yet Dr. Horstmeyer is not a mind reader and would not know of Schlatter's alleged continued dental pain unless Schlatter verbally told him, as there are no other written records explicitly mentioning dental pain.

Nonetheless, assuming that Dr. Horstmeyer knew that Schlatter had continued dental pain, the question is whether Dr. Horstmeyer was deliberately indifferent when he concluded that the pain medications already prescribed would address that pain as well. Although "[a] prison physician cannot simply continue with a course of treatment that he knows is ineffective in treating an inmate's condition," *Holloway*, 700 F.3d at 1074 (quoting *Arnett*, 658 F.3d at 754), contrary to what Schlatter now claims (*see* Schlatter Aff. ¶ 5 (in which Schlatter states that Naprosyn and an over-the-counter pain reliever did not help with his dental pain)), he testified in

his deposition that the pain medications he was on—particularly Tylenol and Naprosyn and then Midrin, a stronger pain medication—provided him some, albeit not enough, relief from his dental pain and admitted that his teeth sensitivity was "obviously" not as bad with the pain medication.  (Schlatter Dep. 66-69.)  Schlatter cannot "create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn testimony." *Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 292 (7th Cir. 1996).  As such, according to Schlatter's own testimony, the pain medications were at least somewhat effective in controlling his dental pain, though not as effective as he would have liked.

Schlatter would have undoubtedly preferred to have been treated by a physician who would have prescribed further pain medication to treat his dental pain, but, as a pre-trial detainee, he was not entitled to receive unqualified access to healthcare, the specific care he demanded, or the best care possible; he was only entitled to receive *adequate* medical care. *Holloway*, 700 F.3d at 1073; *Arnett*, 658 F.3d at 754.  Dr. Horstmeyer took measures to address Schlatter's pain (back, headache, and dental) and concluded that the existing medications were sufficient.  While that pain medication may not have been completely effective in treating Schlatter's dental pain, Schlatter is only entitled to reasonable measures to meet a substantial risk of serious harm, and the summary judgment record does not reveal that no minimally competent professional would have provided this regime of treatment.  *Arnett*, 658 F.3d at 758-59.  Nor does Schlatter demonstrate that Dr. Horstmeyer's decision not to prescribe further pain medication was such a substantial departure from accepted professional standards that it is reasonable to infer that he did not base his decision on a medical judgment.  *Holloway*, 700 F.3d at 1073.

Ultimately, Schlatter's claim against Dr. Horstmeyer boils down to a disagreement about the appropriate course and level of treatment he needed, which does not constitute deliberate indifference. *E.g.*, *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Edwards*, 478 F.3d at 831; *Martin v. Fries*, No. 1:08-CV-100 PS, 2009 WL 5200540, at *8 (N.D. Ind. Dec. 23, 2009). As such, Schlatter has failed to demonstrate that Dr. Horstmeyer acted with a sufficiently culpable state of mind in treating his bleeding gums and dental pain, entitling Dr. Horstmeyer to summary judgment on this claim.

### 2. Schlatter Cannot Demonstrate that Nurse Thornton Acted with Deliberate Indifference

Schlatter next argues that Nurse Thornton repeatedly delayed his dental cleaning when he was a state and federal inmate by refusing to schedule or refusing to permit another nurse to schedule the appointment, all because Schlatter could not pay for it. (Pl.'s Mem. in Opp'n 13.) Defendants respond that Schlatter misstates Nurse Thornton's testimony and point out that Dr. Horstmeyer had not ordered a teeth cleaning and that, therefore, Schlatter had to pay for that treatment under the Jail's practice. (Defs.' Reply 13-14.) They further argue that, under § 1983, Nurse Thornton cannot be held responsible for the actions of a nurse she supervised and dispute that Nurse Thornton had any authority to schedule a dental cleaning after Schlatter became a federal detainee. (Defs.' Reply 14-15.)

Although a significant delay in providing effective medical treatment can support a deliberate indifference claim, especially when it results in prolonged and unnecessary pain, *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010), Schlatter completely ignores the fact that, pursuant to the Jail's practice, Nurse Thornton did not have the authority to authorize the scheduling of an appointment with an outside provider while Schlatter was a state inmate

(Thornton Aff. ¶ 15). Rather, only Dr. Horstmeyer had the authority to order such an appointment (Thornton Aff. ¶ 15), and he did not order that Nurse Thornton, or anyone else, make arrangements for that appointment when Schlatter was a state detainee. *See Holloway*, 700 F.3d at 1075 (finding that nurses did not act with deliberate indifference when they did not give the plaintiff a stronger pain medication than what the prison physician ordered when they did not have the authority to prescribe medication on their own); *Williams v. Guzman*, 346 F. App'x 102, 106 (7th Cir. 2009) (unpublished) (finding that nurses did not act with deliberate indifference when nothing in the record suggested they had authority to refer inmates to outside specialists). Moreover, if Dr. Horstmeyer deemed an inmate's requested treatment not medically necessary—as, for instance, Schlatter's dental cleaning—the inmate could request to be seen by an outside provider, but had to pay for it himself. (Thornton Aff. ¶ 16.) Such matters of medical judgment were the sole province of Dr. Horstmeyer, as the responsible physician providing healthcare services in the Jail. (*See* Thornton Aff. ¶ 12.)

Generally, as a matter of professional conduct, nurses may "defer to instructions given by physicians, 'but that deference may not be blind or unthinking, particularly if it is apparent that the physician's order will likely harm the patient.'" *Holloway*, 700 F.3d at 1075 (quoting *Berry*, 604 F.3d at 443). As such, nurses may act with deliberate indifference if, in following a physician's orders, they ignore obvious risks to an inmate's health. *Id.* (citing *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 683 (7th Cir. 2012)). But Schlatter presents no evidence that Nurse Thornton's deference to Dr. Horstmeyer's decisions were blind or unthinking or that she ignored obvious risks to Schlatter's health. Dr. Horstmeyer had diagnosed Schlatter with only mild gingivitis and treated his complaints with mouth rinses, antibiotics, and multivitamins, and

it was not apparent that this treatment, as opposed to ordering a dental cleaning or deeming it medically necessary, would likely harm Schlatter. As such, Nurse Thornton did not act with deliberate indifference for the two and a half months Schlatter was a state inmate by relying on Dr. Horstmeyer's determination that Schlatter's teeth cleaning was not medically necessary.[5]

Moreover, Schlatter also argues that Nurse Thornton was personally responsible for the purported refusal of another nurse—presumably Nurse Frances Harris, who responded to Schlatter's July 29, 2009, Medical Request Form (Thornton Aff. ¶¶ 28-29, Ex. 1 at 294)—to schedule him for a dental cleaning. (*See* Pl.'s Mem. in Opp'n 13). Although Nurse Thornton supervised the Jail's medical staff, she cannot be held liable for another nurse's alleged constitutional violation solely because she supervised that nurse. *Beard v. Obaisi*, No. 11-CV-3360, 2012 WL 5305357, at *1 (C.D. Ill. Oct. 25, 2012); *see Kuhn v. Goodlow*, 678 F.3d 552, 555 (7th Cir. 2012) ("[Section] 1983 liability is premised on the wrongdoer's personal responsibility."); *Henderson*, 2011 WL 2198312, at *10 ("The doctrine of respondeat superior, under which a supervisor may be held liable for an employee's actions, does not apply to § 1983 actions."). Rather, a supervisor cannot be held liable unless she is "personally responsible for the deprivation of the constitutional right," which means that the supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye to it. *Matthews v. City of E.*

---

[5] Although Nurse Thornton was a registered nurse, during Schlatter's incarceration at the Jail, she was acting as the Director of Health Services, arguably an administrative, rather than medical, role. Even if Nurse Thornton was acting as a non-medical official, "[n]on-medical officials cannot be held liable for reasonably relying on the medical judgment of professionals." *Allen v. Frank*, 246 F. App'x 388, 391 (7th Cir. 2007) (unpublished); *accord Greeno*, 414 F.3d at 656 ("If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." (quoting *Spruill v. Gills*, 372 F.3d 218, 236 (3d Cir. 2004)). Because nothing in the record suggests that Nurse Thornton's reliance on Dr. Horstmeyer's medical judgment was unreasonable, Nurse Thornton was not deliberately indifferent to Schlatter's medical needs when she relied on Dr. Horstmeyer's expertise. *See Henderson v. Fries*, No. 1:09-CV-268-TLS, 2011 WL 2198312, at *10 (N.D. Ind. June 3, 2011).

*St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012) (citations omitted).

Just like Nurse Thornton, however, Nurse Harris did not have the authority to schedule Schlatter for a dental cleaning with an outside provider on her own; only Dr. Horstmeyer did. (Thornton Aff. ¶ 15.)  As such, Nurse Harris did not violate Schlatter's constitutional rights by refusing to schedule him for a dental cleaning, and thus there was no constitutional violation for Nurse Thornton to direct, know about, condone, or turn a blind eye to when Schlatter was a state inmate.  *See Matthews*, 675 F.3d at 708.

And, once Schlatter became a federal inmate, Nurse Thornton had no authority to schedule any kind of outside medical or dental care for him.  Rather, the Marshals Service became responsible for approving all such outside care and any non-emergency transport outside of the Jail.  (Hershberger Aff. ¶¶ 12-13.)  Each time Schlatter requested a dental cleaning as a federal inmate, a nurse at the Jail submitted a request to the Marshals Service to approve a teeth cleaning, which it did not do until September 8, 2010.  (*See* Thornton Aff. Ex. 1 at 9, 16-17, 19-21, 50, 62, 83, 85-87, 262, 264, 266.)  Nurse Thornton submitted the request form herself on only one occasion and communicated the Marshals Service's decision to Schlatter three times. (*See* Thornton Aff. ¶¶ 51, 70, 26, 81, Ex. 1 at 5, 49, 86-87, 265.)  Accordingly, Nurse Thornton was not responsible in any way for delaying the scheduling of a dental appointment after Schlatter became a federal inmate.  She, and the nurses she supervised, were merely following the orders of the Marshals Service, who had the sole authority to approve outside dental care and non-emergency transport.  As such, because she lacked the authority to schedule a dental appointment on her own, Nurse Thornton was not deliberately indifferent to Schlatter's medical needs when he was a federal inmate either.  *See Holloway*, 700 F.3d at 1075; *Williams*, 346 F.

App'x at 106.

Because Schlatter cannot demonstrate that Nurse Thornton was deliberately indifferent to his medical needs while he was incarcerated at the Jail, Nurse Thornton is also entitled to summary judgment on this claim.

### B. Schlatter's Official Capacity Claim Against Sheriff Fries Fails As a Matter of Law

Schlatter also brings an official capacity claim against Sheriff Fries, arguing that the Jail had a widespread practice of denying adequate medical or dental care to inmates based on their inability to pay for it.  (*See* Pl.'s Mem. in Opp'n 15.)

A suit against an individual officer in his official capacity is treated as suit against the municipality itself.  *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 765 (7th Cir. 2006).  A municipality cannot be held liable under § 1983 simply because it employs the alleged wrongdoer.  *Id.* (citations omitted).  Rather, "municipal liability exists only 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'"  *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

Thus, Schlatter's suit against Sheriff Fries in his official capacity is treated as a suit against, in effect, Allen County itself.  *See Mihelic v. Will Cnty.*, 826 F. Supp. 2d 1104, 1117 (N.D. Ill. 2011) (citing *Franklin v. Zaruba*, 150 F.3d 682, 684-86 (7th Cir. 1998)).  Furthermore, the municipality can only be liable when the constitutional deprivation results from a municipal custom or policy, which requires Schlatter to establish "a direct causal link between a custom or policy of [Sheriff Fries] and the unconstitutional conduct that he alleges."  *Robles v. City of Fort Wayne*, 113 F.3d 732, 735 (7th Cir. 1997) (citations omitted).  And even then, Schlatter must

show that the official policy or custom was the "direct cause" or "moving force" behind the constitutional violation. *Monell*, 436 U.S. at 694; *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008).

According to the Seventh Circuit, "unconstitutional policies or customs can take three forms: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Rasche v. Vill. of Beecher*, 336 F.3d 588, 598 (7th Cir. 2003) (citation omitted); *accord Calhoun*, 408 F.3d at 379. Schlatter appears to proceed under the widespread practice theory, arguing that the denial of adequate medical care due to indigence was a widespread policy, practice, or custom at the Jail. (Pl.'s Mem. in Opp'n 15.)

To proceed with a claim against a municipality, however, the plaintiff must first show an underlying constitutional violation. *Schor v. City of Chicago*, 576 F.3d 775, 779 (7th Cir. 2009). As such, if there is no constitutional violation, there cannot be municipal liability. *Matthews*, 675 F.3d at 709; *see City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam) ("Neither *Monell* . . . nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm."); *Belbachir v. Cnty. of McHenry*, No. 06 C 1392, 2012 WL 4594023, at *5 (N.D. Ill. Sept. 28, 2012) (concluding that, because the evidence did not establish a constitutional violation from the actions of the employees, there was no basis for the employer to be liable under *Monell*); *Evans v. City of Chicago*, No. 10 C 542,

2010 WL 3075651, at *4 (N.D. Ill. Aug. 5, 2010) ("Because there must be a constitutional injury for liability under § 1983, a finding of no constitutional injury relieves a municipality from liability."); *Martin*, 2009 WL 5200540, at *8 (noting that a policy claim cannot proceed without an underlying constitutional violation).

In the instant case, it has already been determined that Schlatter's constitutional rights under the Eighth and Fourteenth Amendments were not violated during his incarceration at the Jail. As such, without any underlying constitutional violation, Schlatter's *Monell* claim against Sheriff Fries cannot proceed further. *E.g.*, *Martin*, 2009 WL 5200540, at *8.

Moreover, even if Schlatter could establish an underlying constitutional violation, he has not established that any unconstitutional policy, practice, or custom exists at the Jail. According to Schlatter, the Jail's purportedly unconstitutional practice was denying adequate medical or dental care to inmates based on their inability to pay for it. (*See* Pl.'s Mem. in Opp'n 15.) But Schlatter has not come forward with any evidence that such a policy exists. *Martin*, 2009 WL 5200540, at *8. Rather, the evidence demonstrates that, as a matter of practice, if an inmate required medical or dental care that was medically necessary and could not be provided at the Jail, then Dr. Horstmeyer had the authority to order that arrangements be made for that inmate to be seen by an outside medical or dental provider at the Jail's cost. (Thornton Aff. ¶ 15; Defs.' Reply 19.) On the other hand, if an inmate desired medical or dental care that was *not* deemed medically necessary, the inmate could request to be seen by an outside provider at his own cost. (Thornton Aff. ¶ 16.)

Nothing in the Eighth Amendment "requires a state to provide an inmate, free of charge, with a necessary commodity that would not be free outside the prison walls and which the

24

inmate has the legal means to obtain." *Martin v. DeBruyn*, 880 F. Supp. 610, 614 (N.D. Ind. 1995), *aff'd*, 116 F.3d 1482 (7th Cir. 1997). But because incarceration prevents a person from seeking medical treatment of his own choosing, prisons must provide inmates with a minimal degree of medical care for serious medical needs, though they may require inmates to pay for medical treatment to the extent they can. *Id.* at 614-15. This is because "[t]he Eighth Amendment guarantees only that states will not ignore an inmate's serious medical needs; it does not guarantee free medical care." *Id.* At the same time, "[a] prison official who withholds necessary medical care, for want of payment, from an inmate who could not pay would violate the inmate's constitutional rights if the inmate's medical needs were serious . . . ." *Id.*

The essential question in this analysis is whether the desired medical or dental care is *necessary*. If such care is necessary, then a prison cannot condition an inmate's receipt of the care on his ability to pay for it. *See id.*; *see also Kidd v. Corr. Med. Servs.*, No. 3:06-CV-334 RM, 2006 WL 1544393, at *2 (N.D. Ind. May 30, 2006) ("[T]he Eighth Amendment guarantees only that inmates receive *necessary* medical care; it does not guarantee free medical care." (emphasis added) (citing *Reynolds v. Wagner*, 128 F.3d 166, 174 (3d Cir. 1997); *Martin*, 880 F. Supp. at 615)). According to Nurse Thornton's affidavit, which Schlatter does not dispute, if medical or dental care was deemed medically necessary and could not be provided at the Jail, then an inmate's receipt of that care was *not* conditioned on his ability to pay for it; rather, Dr. Horstmeyer would order that arrangements be made for the inmate to be seen by an outside provider. It was only when treatment was deemed *not* medically necessary that an inmate would have to pay before being seen by an outside provider. As such, the Jail's practice was consistent with the Eighth Amendment, as it did not unconstitutionally withhold *necessary* medical care for

want of payment from an inmate with serious medical needs.  *Martin*, 880 F. Supp. at 615.

And, as implemented in Schlatter's case, this practice did not violate Schlatter's right to adequate medical care.  Dr. Horstmeyer only recommended that Schlatter obtain a teeth cleaning upon release, but did not order one as medically necessary.  Following the Jail's practice, Schlatter's request for this non-emergent teeth cleaning, which had to be performed outside of the Jail, was therefore conditioned on his ability to pay for it.   But, because this treatment was deemed *not necessary*, Schlatter's rights were not violated by requiring him to pay for it.[6]  *See Martin*, 880 F. Supp. at 615.

Accordingly, Schlatter's *Monell* claim against Sheriff Fries also fails as a matter of law, entitling Sheriff Fries to summary judgment on this claim.

## V.  CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion for Summary Judgment (Docket # 65) and DIRECTS the Clerk to enter judgment in favor of the Defendants, Allen County Sheriff Ken Fries, Dr. Richard Horstmeyer, Pamela Thornton, Christine Chase, Andrea L. Sierks, Merissa Runyon, Carol Smith, Amanda Bauermeister, and Officer Richard Wacasey, and against Plaintiff Richard Schlatter.

SO ORDERED.

Entered this 27th day of June, 2013.

/s/ Roger B. Cosbey
Roger B. Cosbey
United States Magistrate Judge

---

[6] Notably, Schlatter received extensive medical treatment while incarcerated in the Jail as a state and federal inmate, including medication for his back pain, an X-ray of his thoracic spine, diabetes checks, an eye examination, and a neurology consultation.  (*E.g.*, Thornton Aff. Ex. 1 at 88-89, 128-34, 194-95, 206, 249-50, 252, 254, 302.)